IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| IRENE JOHNSON, | * |
| Plaintiff, | * |
| v. | *   CIVIL NO.: WDQ-05CV-2665 |
| FEDERAL BUREAU OF PRISONS, *<br>*et al.*, | |
| | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

Memorandum Opinion

Irene Johnson, an inmate at Federal Prison Camp Alderson, West Virginia ("FPC Alderson"), has sued the Federal Bureau of Prisons ("BOP") and petitioned the Court for a writ of *habeas corpus,* challenging BOP regulations that bar transferring prisoners to Community Confinement Centers ("CCCs")(or "half-way houses") for more than 10% of their sentences.  Johnson claims that the regulations, codified as 28 C.F.R. §§ 570.20 and 570.21, violate the Administrative Procedures Act ("APA") and the *Ex Post Facto*, Due Process and the Equal Protection clauses of the Constitution.  Pending is the BOP's motion to dismiss or for summary judgment.  Also pending is Johnson's motion for summary judgment.  For the following reasons the BOP's motion to dismiss will be granted.

1

I.  Background

A.  Relevant Statutes and Policies

According to 18 U.S.C. § 3621(b) the BOP has the authority to "designate the place of a prisoner's imprisonment" and may "direct the transfer of a prisoner from one penal or correctional facility to another."  18 U.S.C. § 3621(b).

Under 18 U.S.C. § 3624(c) the BOP shall:

> to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

Prior to 2002, the BOP routinely transferred prisoners to CCCs for the last six months of their sentences regardless of the 10 per cent limitation.  Def.'s Mot. to Dismiss, p. 4.  In December, 2002, however, the Department of Justice's Office of Legal Counsel opined that the BOP practice violated § 3624(c).  In response, the BOP promulgated a new policy, effective December 20, 2002, limiting pre-release CCC designations to the last 10 per cent of an inmate's sentence, not to exceed six months.

In *Goldings v. Winn* and *Elwood v. Jeter*, however, the First and Eighth circuits invalidated the 2002 policy, holding that it violated § 3621 insofar as it cabined the BOP's discretion to transfer an inmate to a CCC at any time.  *See Goldings,* 383 F.3d 17 (1st Cir. 2004); *Elwood,* 386 F.3d 842 (8th Cir. 2004).

In response, the BOP promulgated a new policy in January, 2005 (the "2005 rules").  Codified as 28 C.F.R. §§ 570.20 and 570.21, the 2005 rules provided that the BOP would categorically exercise its discretion to assign prisoners to CCCs "only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months."  28 C.F.R. §§ 570.20, 570.21.

B.   Johnson's Suit

On December 9, 2004, Johnson was sentenced to 18 months incarceration at FPC Alderson.  Complaint, p. 2.  She surrendered to the prison on October 11, 2005 and is currently serving her sentence.  Evans Decl., Ex. A.

Johnson has sued to challenge the 2005 rules arguing that they violate governing federal law; are arbitrary and capricious under the APA; are impermissibly retroactive, and violate the *Ex Post Facto*, Due Process and Equal Protection clauses of the Constitution.

The BOP has moved to dismiss or for summary judgment arguing that Johnson lacks standing; a *habeas* petition is the improper vehicle for challenging BOP regulations; Johnson has failed to exhaust her administrative remedies; the 2005 rules are lawful; they are not impermissibly retroactive; and they do not violate due process.

Johnson has opposed the BOP's motion and moved for summary judgment arguing, *inter alia*, that a *habeas* petition is a valid method of challenging the BOP regulations and that futility excuses her failure to exhaust her administrative remedies.

II.  Analysis

A.  Standard of Review

Under Rule 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et. al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)). The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id*.

Summary judgment is appropriate under Rule 56(c) when there is no genuine issue of material fact, and the moving party is

4

entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the opposing party must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

B.  Standing

The BOP has moved to dismiss Johnson's claim for lack of standing arguing that her injury is speculative because she has not been evaluated for placement in a CCC and may not be

5

eligible.

In order to establish standing Johnson must show that she suffered an "injury in fact," an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

Under BOP policy, an inmate may not be placed in a CCC unless eligible. Evans Decl., ¶ 8; Program Statement, Community Correction Center Utilization and Transfer Procedure, p. 10. If eligible, a "Unit Team" at the BOP decides whether to refer an inmate to a CCC based on an evaluation of: 1) whether the inmate needs to establish ties with the community; 2) whether the inmate needs to establish residency in the community; 3) whether the inmate needs to secure employment in the community; 4) whether the length of time the inmate has been removed from the community is substantial; 5) judicial recommendations; 6) the inmate's disciplinary record while incarcerated; and 7) any financial obligations. Evans Decl., ¶ 8. The decision whether to refer an inmate to a CCC is made 11 to 13 months before an inmate's probable release date. Program Statement, p. 12.

As noted above, Johnson began her 18 month sentence in October, 2005. Melissa Evans, Johnson's Case Manager, and a member of her Unit Team, has averred that no determination of Johnson's eligibility or suitability for CCC placement has been

made.[1]  Evans Decl., ¶ 10.

Although Johnson has not argued that she has standing, she has submitted a September, 2005 letter from her attorney to Linda Moore, a Contract Oversight Specialist at the BOP, which references a conversation in which Ms. Moore allegedly confirmed that the 2005 rules would not allow placement of Johnson in a CCC for more than 10% of her sentence.  Nathan Letter, dated September 14, 2005, p. 1.  This letter, however, was written before Johnson began her sentence and Ms. Moore, as a Contract Oversight Specialist, will not make the decision to refer Johnson to a CCC.  Therefore, although the letter may show that the 2005 rules will limit the time Johnson can be assigned to a CCC if she is referred to one, it is not evidence that she will be referred.

As there has been no decision that Johnson is eligible for a transfer to a CCC, and because there is no evidence that her referral to a CCC is likely or imminent, the Court cannot assume that BOP's allegedly illegal rules will be applied to her.  As her injury is merely speculative, Johnson lacks standing to sue.  Accordingly, this action will be dismissed without prejudice.

<u>March 3, 2006</u>                   <u>      /s/            </u>
Date                                    William D. Quarles, Jr.
                                             United States District Judge

---

[1] Although Evans has testified that a determination may be made in early 2006, the Court has no evidence that this determination has been made by the BOP.